PANIAGUA v. SOBRINOS DE EZQUIAGA.

APPEAL from the District Court of San Juan.

No. 256.—Decided December 3, 1908.

PARTNERSHIP—ESSENTIAL ELEMENTS OF CONTRACT.—In accordance with the provisions of section 1567 of the Revised Civil Code the essential elements to constitute a contract of partnership are community of property, money or industry, contributed by each partner, and in the absence of such community of property, money, or industry, no partnership contract can exist.

ID.—CONSTRUCTION OF PUBLIC WORKS—LOAN OF MONEY TO CONTRACTOR THEREFOR.—In the case at bar, the plaintiffs and the defendants entered into an agreement whereby the latter bound themselves to furnish the former with such amounts of money as he might ask for and which might be necessary for the construction of public works, and the plaintiff, in turn, agreed to return to the defendant such sums of money derived from the price received for the work, and further, to give them one-half of the profits obtained therefrom; the contracting parties not having made any stipulation with respect to the losses which might occur, and the defendant not having been granted the right to take any part in the construction of the work nor in expending the funds furnished, the court held: That, in accordance with the doctrine set forth in the foregoing paragraph, such facts do not constitute a contract of partnership, because the essential elements of community or property, money, or industry, are absent; but that such facts constitute a contract for the lending of money.

DAMAGES AND LOSSES—PROOF THAT SAME HAVE BEEN OCCASIONED.—In order successfully to demand indemnity for damages and losses it is not sufficient to allege damage and loss, but it must be shown that such damage and loss has been occasioned as a result of the acts of the parties from whom demanded, and that they be alleged and proved definitely and positively.

ACCOUNTS CURRENT—ACKNOWLEDGMENT OF BALANCES.—The approval of an account, by the persons authorized so to do, constitutes a legal tie between them which is sanctioned by article 1278 of the Civil Code; and it is no bar or obstacle to the action which may follow that it is stated that the account is approved with ''errors and omissions excepted.''

The facts are stated in the opinion.

Mr. López Landrón for appellant.

Mr. Eduardo Acuña for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On January 30, 1907, Roque Paniagua filed a complaint in the District Court of San Juan against the commercial firm of Sobrinos de Ezquiaga, praying that in view of the facts alleged and the evidence which would be presented, final judg-

ment be rendered vacating and rescinding, owing to noncompliance on the part of Sobrinos de Ezquiaga, the agreement entered into between the parties for the construction of the works described in said complaint, and consequently adjudging the defendants by way of compensation and equitable correction, or as may be proper in law, to pay the plaintiff exemplary damages in the sum of $26, 110.78, or any other higher or lower sum, according to the result of the evidence, with the costs of the proceedings against the defendants.

The fundamental allegations of the complaint (and there is no necessity of mentioning those relating to the civil capacity of the defendants), are the following:

"1. That about the month of October, 1894, and before and since that date, the successive commercial firms which have done business in this city under the firm name of Sobrinos de Ezquiaga made an agreement with Roque Paniagua to start a construction business to undertake public or private works under the contracting system, presenting bids when advertised for the purpose of securing the awards, and by virtue of this agreement, the plaintiff and defendants stipulated a community of interests and profits in the proportion agreed on.

"2. That to such community of interests for common benefit or profit, Sobrinos de Ezquiaga were to contribute and did contribute the capital consisting of money and credit, and Roque Paniagua his personal labor, his direct management, his experience and his connections; and such community of interests having been established in this form, all the profits and gains upon every work constructed, after deduction and payment of all the debts and general expenses of the construction business, after the capitalists, Sobrinos de Ezquiaga had been reimbursed the money advanced for the works contracted for, were to be divided, and actually and positively were divided equally between the two parties under the express or implied agreement between them.

"3. That Sobrinos de Ezquiaga in contributing their money and credit to the community for the construction of the works and Paniagua, his personal work and zealous diligence, always did so with the deliberate intention of dividing equally all the profits and gains, having acted as partners on shares for the construction of works let out by contract since October, 1894, since which date both parties have made it a practice to consult each other, and always acting in entire and perfect harmony in the application of the capital and the proper

management of the works as well as in the liquidation and division of the profits.

"4. That in the formation of the community the form of a public or private instrument was not adopted, but the parties verbally and by acts and in writing and by memoranda set forth what they deemed proper to their common advantage, and for the purpose of obtaining the profit on the capital and work together agreed on, the name of Sobrinos de Ezquiaga was reserved or kept silent, the name of Roque Paniagua alone being used in the business, for the construction of every work and the bid therefor.

"5. That in the form and manner stated, the contractor Roque Paniagua, with the assistance of the money and credit of Sobrinos de Ezquiaga, obtained for work done up to October 18, 1894, and from this date to June 2, 1904, net profits amounting to 105,341.31 *pesos*, divided equally between Paniagua and Sobrinos de Ezquiaga, apart from the sum of 9,705.76 *pesos*, Spanish provincial money, which the Government of Spain still owed both contracting parties by reason of bonds not returned when it ceased to exercise its sovereignty in Porto Rico.

"6. That the sums representing certificates of works constructed, settled every 15 days under the Spanish regime, and from month to month under the American, was received by Sobrinos de Ezquiaga, as were the common actual profits, they paying no interest whatsoever.

"7. That subsequently, the plaintiff and the defendants, acting in their usual manner as partners and with the purpose set forth of dividing the net profits obtained in the construction of each work, undertook, by common agreement, mutually consulting each other in the more important matters, bid for and were awarded the construction of the following works, under the guarantee of partners of the firm of Sobrinos de Ezquiaga:

"(*a*) The furnishing of crushed stone for the maintenance and repair of the road from Caguas to Cayey, according to contract of June 2, 1905, to expire September 30, of the same year, at a cost of $4,725.

"(*b*) Another contract for furnishing crushed stone for the maintenance and repair of the road from Cayey to Coamo, via Aibonito, according to contract of September 19, 1905, to expire December 1 of the said year, at a cost not stated.

"(*c*) Another contract for furnishing crushed stone for the road from Río Piedras to Fajardo, via Carolina, according to contract of September 22, 1905, to expire on December 12 of the same year, at an estimated cost of $2,750.16.

"(*d*) The supply of new material and labor on the Carolina bridge, according to contract of October 19, 1905, to expire March 1 of the following year, at an estimated cost of $5,430.

"(*e*) The construction of two abutments of the Cagüitas bridge, according to contract of November 28, 1905, to expire on the 20th of February of the following year, at an estimated cost of $10,000.

"8. That Roque Paniagua, depending always on the money and credit of Sobrinos de Ezquiaga, faithfully offered and furnished up to that time, informed them of all the contracts mentioned, fixing the price and undertaking them with their concurrence and agreement, consulting them, and in his opinion working to the mutual advantage and convenience of both parties interested in the profits.

"9. That Paniagua began all of the works contracted for at the time agreed and under the conditions stipulated, devoting himself strictly to compliance therewith, and that the amount of the monthly payments for work done during each month would be collected by Paniagua and turned in to the cashier of Sobrinos de Ezquiaga, who, according to the custom followed since before 1894, advanced the sums necessary for the purchase of supplies, hauling appliances and the construction of the works and the payment of wages, keeping the proper account current, as their own, of all expenses and receipts from the contractor.

"10. That in the works contracted for, many material difficulties arose for the contractor, either through overflows of rivers, or other causes beyond his control, and in consideration thereof the administration granted succesive extensions, giving Paniagua time fully to perform his contracts in the ordinary course of work and the proper gathering of supplies.

"11. That when the plaintiff began to execute his contracts, as also when he made his bids to the Commissioner of the Interior, he had no other fixed and certain resources than those of Sobrinos de Ezquiaga, who, when the works contracted for were about to be concluded towards the middle of February, 1906, and when the contractor was engaged on the most arduous and difficult part of the work, maliciously and fraudulently, with the intention of avoiding possible losses, refused to continue advancing the money indispensable for the works in course of construction and ordered him to suspend them absolutely, Paniagua having openly opposed such suspension on the ground that such action could not be justified to the Government, and because it would cause the loss of all the profits and expenses of the works.

"12. That the absolute withdrawal of the money and credit which Sobrinos de Ezquiaga agreed to furnish produced as a natural and

immediate consequence the abandonment of a large part of the work in course of construction over the Cagüitas River, such abandonment causing the Department of the Interior to cancel the contract for its construction owing to its nonperformance, with all the legal liabilities; it placed great difficulties in the way of the execution of the other contracts mentioned in the seventh allegation, which contracts were terminated only with great loss on the part of the plaintiff contractor, owing to heavy debts and very onerous liabilities which he was compelled to contract by reason of having been thrown on his own resources; and finally, the plaintiff, in addition to the moral damage and very great mental anguish, has visibly and greatly suffered in health.

"13. That the damages caused the plaintiff by the defendants are the follownig, according to equity, conscience and law:

"(a) Damages suffered in the contract for work on the Carolina bridge, $1,500.

"(b) Loss suffered by the rescission of the contract relating to the bridge over the Cagüitas River, by reason of having collected only $2,392.52, for work done, instead of $4,153.30, which he should have collected legally, according to data furnished the Department of Public Works, $1,760.78.

"(c) Total loss of the discount of 10 per cent from the original appropriation of $10,000, according to contract, $1,000.

"(d) Loss suffered by the suspension of payments or credit of Sobrinos de Ezquiaga, compelling the contractor and manager of the works to have recourse to loans, until the contract was rescinded, owing to the said lack of funds, time having been given for the heavy overflow of the Cagüitas River, which swept away almost all the supplies which had been gathered for the work, $1,200.

"(e) Deterioration and damage to supplies, $350.

"(f) Damages caused by the transportation of supplies and the return of tools to their owners, $300.

"(g) Moral loss and damage and loss of health suffered by the plaintiff, Paniagua, $20,000.

"All of which items make a total of $26,110.28.

"14. That Sobrinos de Ezquiaga have declined to make a just and equitable liquidation of all the works contracted for in order to ascertain the profits or losses and charge them against the persons interested in accordance with law, equity, and justice, and also to pay the debts and obligations contracted for the purpose of continuing the works, and the plaintiff has been unable to obtain any satisfactory answer to the friendly request made in private to Sobrinos de Ez-

quiaga through one of their managers, for the performance of their contractual or *quasi* contractual obligations, and for the liquidation and indemnity for damages which they have caused him wilfully and deliberately."

In answering the complaint, Sobrinos de Ezquiaga made a general denial of the facts numbered and related, and as new matter in opposition to said complaint, they made the following allegations:

"1. That about July or August, 1891, under a certain contract for the construction of a work entered into between the plaintiff Paniagua and the Government in this Island, the defendant commercial firm—that is to say, Sobrinos de Ezquiaga, established at that time—made an agreement with the plaintiff to furnish and advance to him the sums of money which might be required in the construction of said work until its conclusion, Paniagua agreeing on his part to refund the sums received with the price of the work which he would deliver to Sobrinos de Ezquiaga as paid to him, and in addition to pay them in consideration of these advances, one-half the net profits of the work, as soon as known.

"2. That this agreement was religiously carried out by the contracting parties, and in accordance therewith, the deliveries of sums of money by the defendants to the plaintiff, as well as the payments of the latter to the former, were entered on the account current which was opened in favor of Paniagua in the commercial books of Sobrinos de Ezquiaga under his personal name when the business was begun.

"3. That during the course of such business, Paniagua entered into a new contract with the Director of Public Works of this Island, for the construction of a stone bridge over the Plata River, near the town of Cayey, and by virtue of this contract the plaintiff and defendants agreed that the agreement relating to the advance of funds above mentioned should be extended to such contract, under the same conditions previously stipulated.

"4. That subsequently and during the course of the years from 1894 to 1905, the plaintiff had entered into a number of contracts with the Department of Public Works for the construction of works and roads and for supplying stone and construction material, and executed them, and with respect to each and every one of these contracts there has been a similar agreement between the plaintiff and defend-

ants as to the advance of funds and the return thereof with the price of the work as paid, with allowance of one-half of the profits.

"5. That with regard to each and every one of the works constructed by the plaintiff under his contracts with the Department of Public Works, the defendants had never in any way whatsoever interferred in anything relating to the execution or management of the works, as they had neither made a study thereof for the purpose of estimating the probable profits, nor had they directed or managed them, nor had they given any advice as to their most economical construction, nor had they directed or ordered any expenditures or purchases, nor had they verified the truth and exactness of the payments and expenditures, nor had they even required an accounting of the disbursements, having confined themselves in accordance with the stipulations of the agreement to bonding the plaintiff guaranteeing the execution of the contracts in cash and personally, to supplying all the funds asked of them, to receiving the sums paid to them in partial payment, and to receiving on certain occasions their part of the profits.

"6. That up to the year 1899, the receipts and payments of funds were entered on the account current which had been opened in the commercial books of the defendants in his own personal name, the result of other transactions between them being also entered thereon; but it was afterwards agreed that beginning with the month of January, 1900, the plaintiff was to have two accounts current on the said books, one under the title of "Roque Paniagua Road Account," to be confined exclusively to the transactions pertaining to constructions, and another under the title of "Roque Paniagua in account current," referring to the other relations which he maintained with the defendants.

"7. That under the agreements and stipulations mentioned, the plaintiff and defendants made the following liquidations of profits:

"(a) One on November 9, 1894, which covers the profits derived from works until the month of October of the same year, amounting to 10,264.70 *pesos*, Mexican money, equivalent to $6,158.82, American gold, of which the defendants received $3,079.41 in the latter currency.

"(b) Another of December 24, 1899, which comprises the profits on works executed between said date and the prior date of October, 1894, amounting to $30,294.24, provincial money, equivalent to $18,176.54, American gold, of which the defendants received in the latter money, $9,088.27.

"(c) Another on January 1, 1902, which includes the profits obtained between said date and January 29, 1900, amounting to $41,929.13, of which the defendants received $20,964.56.

"(*d*) And, finally, another of June 2, 1904, comprising the works from February, 1902, representing a profit of $8,287.42, American currency, of which' the defendants received $4,143.62. The total amount received by the defendants being $37,275.86.

"8. That in the year 1905, Paniagua secured and entered into the following contracts with the Department of Public Works:

"(*a*) One dated June 3, of said year, to expire on the 30th of September of the same year, for furnishing 2,500 cubic meters of crushed stone for road No. 1, from San Juan to Cayey, for the sum of $4,750, at the rate of $1.89 per cubic meter, which contract was not completed by Paniagua, who failed to deliver within the time agreed 388 cubic meters of· stone, for which reason, under the terms of the contract, $60.72 was deducted from the price; but on October 24 of the same year, the contract was completed in full, and he received as the total price the sum of $4,644.49.

"(*b*) Another dated September 19, to continue to December 1, for furnishing 479 cubic meters of crushed stone for the same· road, section from Aibonito to the Playa of Ponce, kilometers 80 to 87, for the price of $915.30, at the same rate of $1.89 per cubic meter, which contract Paniagua also failed to complete, failing to deliver in due time 129.87 cubic meters of stone, not delivering them until February 17, 1906, suffering a reduction of $100, having received as the net price (so he says), $805.31.

"(*c*) Another of the same date and for the same term as the preceding contract, to furnish 493 cubic meters of crushed stone for the said road from Aibonito to Ponce, kilometers 80 to 87, for the price of $931.77, at the same rate of $1.89 per cubic meter, which contract Paniagua also failed to complete, not delivering 135.13 cubic meters until February 14, 1906, suffering a deduction of $100, having received as the net price, $831.77.

"(*d*) Another of September 22, to expire December 12, and then extended to January 31, 1906, to furnish 1,637 cubic meters of stone for road No. 7 from Río Piedras to Fajardo, for the price of $2,750.16, at the rate of $1.68 per cubic meter, which contract Paniagua also failed to complete, not having delivered 975.50 cubic meters until after the said 31st of January, for which reason $100.06 was deducted, having received (so he says), as the net price, the sum of $2,650.12.

"(*e*) Another of October 19, to expire March 1, 1906, which was extended to July 20 of said year, to furnish material and foundations for an iron bridge over the Río Grande de Loiza, Carolina, for the

price of $4,686.45, which contract Paniagua also failed to fulfill, giving rise to a deduction of $575.09, which reduced the net price obtained to $4,111.36.

"(*f*) And, finally, another of November 28, to expire on February 20, 1906, which was later extended to April 4 of said year, for the construction of two of the abutments of the bridge over the Cagüitas River on the Caguas Road, for the price of $8,434.50, which contract was rescinded on account of noncompliance by Paniagua, upon whom a penalty was imposed of 10 per cent of the total value of the work, so that, the total value of what had been constructed being estimated at $3,392.52, and $1,000 having been deducted, the price he received was $2,392.52. Making a total according to the defendants, of $13,435.57.

"9. That under the contracts described, the plaintiff received from the date of the first one, June 2, 1905, to March 31, 1906, the sums which follow:

Under contract letter (*a*):
   On July 31, 1905............................................... $1,225.58
   On September 30, 1905......................................... 2,366.94
   On October 3, 1905............................................ 1,071.97
Under contract letter (*b*):
   On February 17, 1906.......................................... 805.31
Under contract letter (*c*):
   On February 14, 1906.......................................... 831.77
Under contract letter (*d*):
   On January 31, 1905........................................... 1,000.00
Under contract letter (*e*):
   On February 19, 1906.......................................... 1,067.50
   Do............................................................ 19.16
   On March 31, 1906............................................. 862.05
Under contract letter (*f*):
   On February 15, 1906.......................................... 845.10

     Total according to defendants...................... 10,196.57

"10. That of said sums Paniagua delivered to Sobrinos de Ezquiaga, the following sums only which were credited on the account current:

Under contract letter (*a*):

| | |
|---|---:|
| On August 9, 1905 | $1, 225. 58 |
| On October 26, 1905 | 2, 366. 94 |
| On November 4, 1905 | 1, 071. 97 |

Under contract letter (*d*):

| | |
|---|---:|
| On March 21, 1905 | 1, 000. 00 |

Under contract letter (*e*):

| | |
|---|---:|
| On March 21, 1905 | 1, 086. 66 |
| Making a total according to the defendants of | 6, 751. 34 |
| | |
| Total sum received | 10, 196. 57 |
| And the amount delivered by the plaintiff | 6, 751. 34 |
| | |
| Making a difference according to the defendants of | 3, 445. 13 |

"11. That on June 2, 1905, the date when the execution of the contract marked letter (*a*) began, the account current of Paniagua with Sobrinos de Ezquiaga for roads, showed a balance in favor of the latter and against the former of $2,808.78, and from said date, June 2, 1905, to March 31, 1906, when said account was closed, the balance had increased to $13,890.76; so that if there be deducted from the latter amount the $2,808.78, the balance due at the beginning of the works, there remains $11,081.98, which represents the sum delivered by the defendants to the plaintiff during the course of the works, which sum exceeds by far the total amount invested by the plaintiff in the same.

"12. That by the violation of the contract by the failure to deliver to the defendants the sums which the plaintiff received as the price of the works, as well as owing to the circumstance that the defendants had delivered to the plaintiff up to March 31, 1906, a sum which exceeded by far the total costs of the works done, they on said date suspended their advances and submitted to the plaintiff, requesting him to approve it, a copy of his private account current showing a balance against him of $6,711.60, and of his road account, with a balance against him also of $13,890.76, which balances Paniagua approved absolutely by letter of May 18 of the same year, without making any objection whatsoever.

"13. That with regard to the damages the plaintiff seeks to recover, upon the inadmissible assumption of any right thereto existing, the material damages are not chargeable to the defendants as they were not due to any acts of theirs, nor does any pecuniary indemnity for

moral damages lie, because they are not susceptible of legal justification and appraisal, apart from the fact that the suffering in health alleged by the plaintiff by reason of the withdrawal of the money and credit of Sobrinos de Ezquiaga' are not to be admitted, because since February, 1906, he has been enjoying the same state of health which he had been previously enjoying, as he has been observed attending personally to his business without interruption, and specially to the management of the different works contracted for by him.

"14. That the plaintiff, by virtue of the deliveries of money and effects which the defendants have made him, both for the contracts for works which are the subject matter of this litigation, as also to meet his personal and family expenses, owes Sobrino de Ezquiaga the sum of $19,612.36, being the total, as shown, of the acknowledged balances against him in the two accounts referred to."

In consideration of what they have stated, the defendants pray for judgment holding that the law and the facts are in favor of the defendants and against the plaintiff and that the juridicial relations between the parties represent contracts of loan and not of partnership, and all the prayers of the complaint be dismissed, and that under the counterclaim plaintiff be adjudged to pay the defendants the sum of $19,612.36, with interest to the date of full payment, and the costs of the proceedings.

The case having been called for trial on the date set, October 29, 1907, after the plaintiff had presented his evidence, he prayed for and was granted leave to amend his complaint to the effect that the allegation of fact in which he sets forth the damages caused him by Sobrinos de Ezquiaga, amounting to $26,110.78, be definitely considered to be drawn in the following form:

"That the defendants have wilfully and maliciously caused the plaintiff, through noncompliance and violation of their usual custom and of their contract of private partners on shares, general damages of great consideration, unappraisable, of a nominal character, past, present and future, as a logical and necessary result to health, peace and happiness of the plaintiff, as well as to his credit and reputation in commerce and in the Island of Porto Rico."

As a consequence of the foregoing amendment, the prayer of the complaint was also amended by Paniagua in the sense that in view of the allegations and the evidence in support of all of them, final judgment be rendered holding that Sobrinos de Ezquiaga had wilfully failed to carry out the agreement between the parties for the construction of the various works mentioned in the complaint, and, therefore, adjudging the defendants, Sobrinos de Ezquiaga, to pay the plaintiff as general, exemplary, punitive, or correctional damages, or as may be proper in law, a reasonable indemnity in the sum of $30,000, or any other greater or less sum which may be adequate according to sound judicial discretion, in addition to the costs of the litigation.

The trial ended by judgment of the lower court on the 30th of said month of October, dismissing the complaint and adjudging the plaintiff, Roque Paniagua, to pay by way of reconvention to the defendants, Sobrinos de Ezquiaga, the sum of $19,612.36, with interest and costs.

From this judgment, which was entered the day following its rendition, the plaintiff Paniagua took an appeal in due time, which appeal is now awaiting the decision of this Supreme Court, and we shall now decide it after having carefully considered both the written and oral allegations of the parties.

The appellant alleges as grounds for his appeal:

"1. That the business relations between the plaintiff, Roque Paniagua and the defendants, Sobrino de Ezquiaga, constitute a partnership agreement, to which sections 1567, 1568, 1569, 1580, 1582, 1588, 1591, 1593 first subdivision, 1602 and 1609 of the Civil Code are applicable.

"2. That Sobrincs de Ezquiaga have wilfully failed to comply with their obligations as partners toward Roque Paniagua, by withdrawing from the latter their capital and credit, for the purpose of avoiding possible losses, and thus reducing him to a distressing moral and material situation, in every respect compromising and discrediting, after having obtained through his intelligence and natural experience extraordinary gains.

"3. That even on the unfounded hypothesis that the relations of

Sobrinos de Ezquiaga with Paniagua were only those of a contract of loan, for the execution of the works until their conclusion, Sobrinos de Ezquiaga failed to perform the obligation contracted by withdrawing their money from Paniagua when his critical situation most urgently demanded capital for the continuation of the works.

"4. That as a consequence of the violation of the law of the contract, whether called a partnership or a loan contract, Sobrinos de Ezquiaga are bound to indemnify the plaintiff for the damages he has suffered.

"5. That with reference to the counterclaim relating to the balance of the private account current of Paniagua, there is no cause of action except in an absolutely separate and independent complaint, according to sections 111 and 115 of the Code of Civil Procedure, and with regard to the balance of the account current pertaining to roads, it cannot be claimed either, whether the contract between Paniagua and Sobrinos de Ezquiaga be a partnership or loan."

As a result of the evidence presented at the trial, we can affirm with counsel for the respondent in his brief in this Supreme Court, that the stipulations of the first contract between Paniagua and Sobrinos de Ezquiaga for the work of construction of the bridge over the Río Plata River, which stipulations were extended in the course of the years 1892 to 1905, to the other works referred to in the action, were the following:

"In the year 1892 Roque Paniagua and the firm of Sobrinos de Ezquiaga doing business at that time, entered into a contract under which the latter agreed to furnish the former the sums which he should require for the construction of a bridge over the Río de la Plata in Cayey for the construction of which he had entered into a contract with the Government of Porto Rico, and in turn Paniagua agreed to return to Sobrinos de Ezquiaga said sums with the price of the work as he received it, and, in addition, to pay them one-half of the profits from such works; the contracting parties did not make any agreement as to the losses which might be suffered, nor were Sobrinos de Ezquiaga granted any intervention whatsoever in the work to be done, nor in the management of the funds which they advanced."

That such were the stipulations of the agreement between Paniagua and Sobrinos de Ezquiaga is to be deduced from the

testimony of the parties at the trial, and if there should be any doubt as to the mode and form in which Paniagua was to return to Sobrinos de Ezquiaga the sums received, it would be dissipated by the copies of the accounts current relating to roads betwen the plaintiff and the defendants, with balances that were sometimes in favor and at other times against Paniagua, from which accounts it is to be deduced that Paniagua was the debtor or creditor of Ezquiaga on the dates of said accounts and it was not necessary to await the liquidation of the profits on the works to fix such characters of debtor and creditor.

In corroboration of what we have just stated, we have a letter addressed to Sobrinos de Ezquiaga by Paniagua on May 18, 1906, in which the latter approved the balances of $6,711.50 and $13,890.76, which the private and road accounts upon the books of Sobrinos de Ezquiaga, respectively, showed. If Paniagua acknowledged that he was indebted to Sobrinos de Ezquiaga in the sum of $13,890.76, as the balance of the road account, it is logical to deduce that by virtue of the stipulations of the contract he considered himself bound to return to Sobrinos de Ezquiaga the sums which the latter had advanced him for the works, and which he had not returned with the price which had been paid him by the Insular Treasury, while the total liquidation of the works was to be awaited only for the purpose of both parties receiving the half of the profits obtained, because with respect to the losses suffered both Paniagua and Sobrinos de Ezquiaga agree that nothing was stipulated.

In view of the result of the evidence, we must maintain that there was not a real contract of partnership between Paniagua and Sobrinos de Ezquiaga.

Section 1567 of the Civil Code reads as follows:

"Partnership is a contract by which two or more persons bind themselves to contribute money, property or industry to a common fund, with the intention of dividing the profits among themselves."

According to this definition, an essential element of partnership is the community of property, money or industry, determined by the contribution made by each partner, and if such cummunity of money, property or industry does not exist, there is no partnership, nor can there be any.

In this case no community of property, money or industry has been created between Sobrinos de Ezquiaga and Paniagua, because the latter took the sums of money which the former furnished him for the works, binding himself to return them with the proceeds from the works which he executed, retaining as his own his industry or personal work, neither the money contributed by Sobrinos de Ezquiaga nor the industry or personal work of Paniagua becoming the property of a different social entity of Sobrinos de Ezquiaga and Paniagua.

If no contract of partnership existed, it is impossible to apply the legal provisions governing such contract and maintain that it was violated by Sobrinos de Ezquiaga.

The relations existing between the parties was an agreement by which Sobrinos de Ezquiaga undertook to furnish Paniagua the sums necessary to carry out the works contracted for, under the condition of equally dividing the sums obtained.

Under this agreement, as is natural, the deliveries of money made by Sobrinos de Ezquiaga to Paniagua must be regarded as loans.

And now we ask, "Did Sobrinos de Ezquiaga fail to perform the agreement entered into with Paniagua?"

According to the contract between Paniagua and the Department of the Interior (Bureau of Public Works), duly authorized on June 2, September 19 and 28, October 3 and 21, and November 29, 1905, the works contracted for were valued, respectively, at $4,725, $905.31, $931.77 $2,750.16, $4,686.45 and $8,434.50, which sums make a total of $22,433.19. This total is that which Sobrinos de Ezquiaga were, at the utmost, bound to advance to Roque Paniagua during the course of the works.

Upon examining that part of the road accounts of which an extract is of record, which may refer to the contract for works involved in these proceedings, we find that one of these accounts, that rendered on July 20, 1905, begins with an item of March 6 of the same year, which is a charge against Paniagua for $424.15, the total debit being $8,618.65, and the balance against Paniagua, $3,768.20; that another account, dated October 13, 1905, begins with an item of July 20, 1905, which is the balance against Paniagua of $3,768.20, to which the previous account refers, the total debit being $13,019.71, with a balance of $7,669.13 against Paniagua; and that the last account of March 31, 1906, begins with an item of October 13, 1905, which is the charge against Paniagua of $7,669.13, to which the previous account refers, the total debit being $20,861.52, with a balance against Paniagua of $13,890.76.

It is to be deduced from these three accounts that Paniagua received on July 20, 1905, from Sobrinos de Ezquiaga, the sum of $8,193.50, which represented the debit of the account of that date after deducting the item of $425.15, the balance against Paniagua of the previous account, that he received on October 13 of said year, the sum of $9,251.51, which represents the debit of the account of said date, after reduction of the item of $3,768.20, the balance against him from the pre-previous account; and furthermore, that he had received on March 31, 1906, the sum of $13,192.39, which represents the debit of the account of that date after the deduction of the item of $7,669.13, the balance against Paniagua from the previous account.

The two items of $9,251.51 and $13,182.39, to which the last two accounts refer, make a total of $22,443.90 delivered to Paniagua by Sobrinos de Ezquiaga between July 20, 1905, and April 30, 1906, and if we add to this total the sum of $8,193.50 delivered to Paniagua by Sobrinos de Ezquiaga, according to the account of July 20, 1905, the first item of which is that of March 6 of the same year, we will have a total of $30,637.40 delivered by Sobrinos de Ezquiaga to Paniagua.

Although we do not have the details of the account of July 20, 1905, in order to be able to state which of the items thereof are subsequent to the date of June 2 when the contract for the first work was entered into, and consequently to determine the total amount received by Paniagua from Sobrinos de Ezquiaga since said date, this does not prevent us from affirming, in view of the last two accounts, that Paniagua received not less than the sum of $22,443.90 for the works, apart from the fact that the lower court which considered the details of the accounts undoubtedly held that the total sum received by Paniagua exceeded $22,433.19, which was the total cost of the works, and we must accept such finding, as it has not been proved to us that it was incorrect.

But even on the assumption that Sobrinos de Ezquiaga did not comply with the contract entered into with Roque Paniagua for the construction of the works described in the complaint, whether they were partners or lender of Paniagua, withdrawing their money and credit from the latter before the works were concluded, the damages which the plaintiff seeks to recover from the defendants cannot be awarded.

Section 1058 of our Civil Code, which is a reproduction of article 1101 of the former Code, provides that "those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnity for the losses and damages caused thereby"; but a mere allegation of such losses and damages is not sufficient, but it is necessary in order to recover, that there be previous sufficient justification of the realty and existence of the damages claimed, and that they be alleged and proved in a positive and specific manner. The Supreme Court of Spain so held in its opinions of June 25, 1880, February 28, 1894, January 9, 1897, September 30, 1898, and February 19, 1904.

The same doctrine was announced by this Supreme Court in the case of *Juan Urrutia* v. *Alejandrina Laugier,* when we held: "The amount of damages sustained by him is certainly

a material fact to be proven before he could recover a judgment, and to fix the amount of the judgment should any be recovered.''

The plaintiff specified in his complaint the damages caused him by the defendants by reason of the withdrawal of the money and credit; but such allegation was substituted in an amendment to the complaint, by another in which Paniagua alleges only that the defendants wilfully and maliciously, through nonperformance and violation of their·usual custom and of their contract as private partners on shares, caused him general damages of great consideration, unappraisable, of a nominal character, past, present and future, as logical and necessary results to the health, peace and happiness of the plaintiff, as also to his credit and reputation in commerce and the Island of Porto Rico, which damages he estimates in the amended prayer of the complaint at the reasonable and conservative sum of $30,000.

And let it be noted that such amendments were made by the plaintiff in view of the result of the evidence heard at his instance at the trial.

We have carefully examined this evidence, and we do not find therein any cause for affirming that Paniagua had suffered in his health, peace, happiness and credit as a consequence of the act of Sobrinos de Ezquiaga in shutting off their funds; because by a letter addressed on October 6, 1906, to Sobrinos de Ezquiaga, which he has acknowledged to be his, he states that on the preceding Tuesday he had begun the foundation for the hospital building, to which work he had to attend the entire week; that when the credit of Sobrinos de Ezquiaga was withdrawn he had already some works half done and others begun and being without means, not only had to dispose of what he was collecting little by little from public works, but due to his honesty, which was well known in Porto Rico, and without any other security than his person, he had been enabled to collect sufficient funds with which to cover his most urgent needs, and thus meet the desperate situation in

which he had been placed by Sobrinos de Ezquiaga; and that with the assistance of. Sobrinos de Ezquiaga the losses suffered could still be recovered and profit obtained from the business which they might undertake.

In a subsequent letter of November 30, 1906, also acknowledged by Paniagua, the latter asks Sobrinos de Ezquiaga for the sum of $700 to pay the laborers, which shows that the health of Paniagua had not suffered to such an extent as to prevent him from attending to and directing works.

This evidence, presented by the defendant, contradicts the fundamental allegation of the complaint of Paniagua in support of his claim for damages from Sobrinos de Ezquiaga.

The second part of the judgment appealed from, in so far as Paniagua is adjudged by way of counter claim to pay Sobrinos de Ezquiaga the sum of $19,612.36, with interest and the costs of the proceedings, also conforms to the law.

The defendants in their last allegation of the answer to the complaint, allege that Paniagua owed them the sum of $19,612.36 as the total of the acknowledged balances against him, in his private as well as in the special road accounts.

The balance of the private account current against Paniagua is $6,711.60, and the balance against him on the road account amounts to $13,890.76, and as these items give a total of $20,602.36, we must assume that in the complaint as well as in the judgment, an error in addition has been made amounting to $990; but the parties in interest—that is to say, Sobrinos de Ezquiaga—have not sought to correct this error, either in the lower court or in this appellate court. It appears to us that we should not make it of our own motion in order not aggravate the situation of the only appellant, Roque Paniagua.

We do not find that Paniagua made any opposition whatsoever in the lower court against the counter claim of Sobrinos de Ezquiaga, as the record does not even show that he made answer thereto. Paniagua acknowledged the balances of both accounts in his letter of May 18, 1906; and in his oral testi-

mony he also acknowledged the genuineness of the signature to said letter.

This court being of the opinion as it is that the agreement between Paniagua and Sobrinos de Ezquiaga does not entail a real contract of partnership, but an obligation on the part of the latter to furnsh the former the pecuniary assistance necessary for the construction of the works contracted for, which obligation was more than complied with by Sobrinos de Ezquiaga, a logical and legal consequence is that Paniagua should pay Sobrinos de Ezquiaga the sum owed which he is adjuged to pay in the judgment, a sum which is lower, as has been said, than that which he really owed them.

The Supreme Court of Spain in construing article 1278 of the Civil Code there in force, which is the equivalent of section 1245 of our Code, said in its opinion of July 8, 1904:

"The acceptance and approval of an account by the person interested, constitutes between them a juridical tie which is sanctioned by article 1278 of the Civil Code, a clause to the effect that the account is approved save error or omission not being an obstacle thereto nor does it affect the efficiency of the resulting action; because in this case such reservation does not have the importance alleged by the appellant, as this would be equivalent to an annulment of the agreement, but its only and exclusive purpose is to correct the possible errors which may be committed in any account, in so far as they do not affect items or losses expressly referred to."

Paniagua has acknowledged the balances of the accounts claimed; he has not made any allegations in opposition thereto nor has he shown that any error or omission has been made in the accounts, and he is therefore obliged to pay such balance.

For the reasons stated, the judgment appealed from should be affirmed, with the costs of the appeal also against the appellant, Roque Paniagua.

*Affirmed.*

Justices Figueras, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.